[No. A033640. First Dist., Div. Two. Feb. 17, 1987.]

SAN FRANCISCANS FOR REASONABLE GROWTH, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents;
LINCOLN-HUNT DEVELOPMENT COMPANY, Real Party in Interest and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of part II.

---

**COUNSEL**

Sue C. Hestor, Kathryn Burkett Dickson and Joel R. Singer for Plaintiff and Appellant.

George Agnost, City Attorney, Paula A. Jesson and Melba Yee, Deputy City Attorneys, for Defendants and Respondents.

Jonathan R. Bass and Coblentz, Cahen, McCabe & Breyer for Real Party in Interest and Respondent.

OPINION

**ROUSE, Acting P. J.**—Plaintiff, San Franciscans for Reasonable Growth (SFRG), appeals from a judgment denying its petition for a writ of administrative mandate and from an order dismissing its claims made under the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.)

This dispute involves a historic San Francisco restaurant, Hoffman's Grill. In 1981 the Hoffman's building was designated a landmark structure by the city. The Hoffman's building occupies part of an irregular parcel (bounded on the northwest by Market Street, on the southeast by Stevenson Street and running through the block from Second Street to New Montgomery Street) on which real party in interest, Lincoln-Hunt Development Company (Lincoln-Hunt), planned to erect a 19-story office building. Because Hoffman's had landmark status it was necessary for Lincoln-Hunt to acquire a "Certificate of Appropriateness" (S.F. City Planning Code, art. 10, § 1006) in order to build in Hoffman's airspace. The Landmarks Preservation Advisory Board (landmarks board) adopted a resolution on May 4, 1983, finding that the Lincoln-Hunt proposal was appropriate and referred the matter to the San Francisco City Planning Commission (planning commission or commission). The certificate of appropriateness was approved by the planning commission on June 30, 1983.

On that same date the planning commission also approved Lincoln-Hunt's building permit application, subject to various conditions. Design conditions 4 and 5 are particularly relevant to this action. Condition 4 provided "Project sponsor shall retain and maintain the landmark Hoffman's Grill in its present location, keeping the facade and interior intact for the life of the project . . . ." Condition 5 declared "There shall be no new signage on the retail spaces of the approved project on either the east or west side of the Market Street frontage. Existing signage on Hoffman's Grill shall be retained."

Under Hoffman's long-term lease the restaurant's owner had a right to approve plans for the project. On June 22, 1983, Hoffman's owner, Mr. Betz, refused to approve the plans. Acting under a provision in the lease Lincoln-Hunt elected to terminate the lease and to demand Betz vacate in

90 days. On July 21, 1983, Lincoln-Hunt brought an action for declaratory relief under the lease. Hoffman's responded by petitioning to compel arbitration, and the matter was submitted to arbitration. The arbitration award, made May 18, 1984, provided that Betz would vacate the structure within 45 days after receiving payment of some $2.9 million found due him and would be permitted to remove certain fixtures from the interior of the restaurant and various items including "all signs" from its exterior. Sometime in July 1984, Betz removed certain interior fixtures and "facade elements" from the building.

On July 13, 1984, Lincoln-Hunt filed an application to be relieved from complying with design conditions 4 and 5 (described above) upon their building permit. The planning commission acted on the application by modifying design conditions 4 and 5 to read, in pertinent part: "4. The Project Sponsor shall preserve and restore Landmark No. 144 and use every best effort to maintain a restaurant of similar style to the landmark Hoffman's Grill structure in its present location. . . . [T]he Project Sponsor shall restore and keep the facade and interior substantially intact for the life of the Project. [¶] 5. There shall be no new signage on the retail spaces . . . of the Market Street frontage . . . . [T]he Project Sponsor shall use its best efforts to minimize changes (other than name changes) in the signage associated with the former Hoffman's Grill." At the time the planning commission approved the modified conditions 4 and 5 it found that those "modified conditions do not materially or substantively change any of the conclusions or findings" made by the commission when it originally approved the building permit. It further found that the earlier certificate of appropriateness based upon the recommendation of the landmarks board was "not significantly modified" by the motion approving the modified conditions.

The city issued Lincoln-Hunt an alteration permit on July 30, 1984. SFRG appealed issuance of the permit to the San Francisco Board of Permit Appeals (board of permit appeals). The board of permit appeals upheld issuance of the permit. SFRG filed a petition for a writ of mandate in superior court. By a judgment filed September 23, 1985, the petition was denied. SFRG made a timely appeal.

I.

SFRG contends that the trial court erred in dismissing its CEQA claims under Public Resources Code section 21167.4.

SFRG's petition for a writ of mandate alleged that the various city agencies, including the planning commission and the board of permit appeals,

abused their discretion in modifying design conditions 4 and 5. The petition also alleged violations of CEQA. The petition for the writ was filed April 1, 1985. On July 9, 1985, Lincoln-Hunt moved to dismiss that portion of SFRG's petition which dealt with alleged violations of CEQA; the motion was made on the ground that under Public Resources Code section 21167.4 the CEQA claims should be dismissed because SFRG had failed to ask for hearing on the petition within 90 days of having filed it. The CEQA claims were dimissed by order of August 6, 1985.

Public Resources Code section 21167.4 provides: "In a writ of mandate proceeding alleging noncompliance with this division, the petitioner shall request a hearing within 90 days of filing the petition or otherwise be subject to dismissal on the court's own motion or on the motion of any party interested therein." In dismissing the CEQA claims the trial court found the 90-day provision of the section to be mandatory. Plaintiff contends it was error for the trial court to read "subject to dismissal" as mandatory language. Apparently, this question is one of first impression.

■ In construing statutes the duty of this court is to ascertain the intent of the Legislature so as to achieve the purpose of the statutory scheme. (*Select Bases Material* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) To determine intent we look first to the words themselves, reading them to carry their "usual" and "ordinary" meaning. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ Section 21167.4 provides that the "petitioner shall request a hearing within 90 days . . . ." Thus, the mandatory duty established by the statute is that a petitioner must seek hearing on the writ within 90 days of filing his petition for the writ. Should a petitioner fail to meet that deadline his CEQA action will "be subject to dismissal on the court's own motion or on the motion of any party . . . ." SFRG argues that the words "subject to" make the court's decision on a motion to dismiss a late claim a discretionary one.

SFRG maintains that the section should be construed by looking at the dismissal provisions under Code of Civil Procedure section 583.250 for actions in which service of summons is not made within three years or under Code of Civil Procedure section 583.360 for actions not brought to trial within five years. SFRG argues that, because the language "subject to dismissal" employed in Public Resources Code section 21167.4 does not appear in those sections which do require mandatory dismissal, the language of section 21167.4 must be construed as discretionary. Section 21167.4 does not track the language employed in the Code of Civil Procedure dismissal statutes, but we cannot assume that the differences in its language signal clear

legislative intent to make the section discretionary. Also, we are satisfied that policy concerns favoring trial on the merits are not necessarily the same in a CEQA action as in the usual civil action.

In support of its position SFRG cites to the legislative history of Public Resources Code section 21167.4. In fact, there is nothing in the legislative history of the section which bears specifically upon whether the decision to dismiss is a mandatory or a discretionary one. The section was added as an amendment to Assembly Bill No. 2147, and there is nothing in that bill or the analyses of it to explain its purpose (Stats. 1980, ch. 131, § 3, p. 304; see Legis. Counsel's Dig., Assem. Bill No. 2147, 4 Stats. 1980 (Reg. Sess.) Summary Dig., p. 38) beyond a statement in the enrolled bill report. That document, prepared by the resources agency, accompanied the bill when it was sent to the Governor and it contained an agency analysis of the bill's provisions. The enrolled bill report states: " 'The requirement for filing a notice for a hearing within 90 days after filing the lawsuit is designed to avoid delays in the litigation. The writ of mandate is intended to be an expeditious proceeding.' " (Quoted in State of Cal., Office of Planning and Research, CEQA: The California Environmental Quality Act, Law and Guidelines, Jan. 1984, p. 195 (hereafter Guidelines).)[1]

In reliance upon the resources agency's statement SFRG suggests that the bill was enacted in response to a particular situation where a writ petition was filed but no hearing ever requested. (Guidelines, at p. 194.) SFRG contends the section should thus be read *only* to permit dismissal where a project is brought to a halt or otherwise prejudiced by the failure of a petitioner to seek a hearing within 90 days. We find nothing in the language of the section to justify this interpretation.

On the contrary, the language of the bill is more susceptible to the meaning that if a petitioner does not request a hearing on his writ petition within 90 days of having filed it, the petition shall be dismissed if the court sua sponte moves for dismissal or such a motion is brought by one of the

---

[1]SFRG has asked this court to take judicial notice of this publication. To the extent the publication reprints the guidelines which are otherwise contained in California Administrative Code, title 14, section 15000 et seq., they are "regulations" of a "public entity" of which we may take judicial notice under Evidence Code section 452, subdivision (b). The purpose for which SFRG wishes to cite this publication, however, is not for administrative guideline section 15232, which in substance merely restates the language of Public Resources Code section 21167.4, but for the "Discussion" section which follows the guideline. This discussion contains information as to the background of the legislation, some of that information attributed to a specific written source and some not. SFRG apparently asks us to take judicial notice of the publication as an "official act" of the executive branch of state government which published the document. (Evid. Code, § 452, subd. (c).) We elect to exercise our discretion to take judicial notice of the document in its entirety.

parties. Thus, granting of the motion would be mandatory where a party sought dismissal or discretionary to the extent that the court, sua sponte, could initiate the dismissal.[2]

This view is consistent with the language of section 21167.4 and with the statutory scheme. CEQA actions have short statute of limitations periods and are entitled to preference at trial and on appeal. (Pub. Resources Code, §§ 21167, 21167.1.) Obviously, the rationale of the statutory scheme is to avoid delay and achieve prompt resolution of CEQA claims. Only a petitioner has a duty under the section. He or she must, within 90 days of filing his or her claim, request a hearing. However, the hearing need not be actually held within the 90-day period. (*Mitchell* v. *County of Orange* (1985) 165 Cal.App.3d 1185, 1192 [211 Cal.Rptr. 563]; see also Guidelines, *supra,* at p. 194.)

Accordingly, we hold that the dismissal of a CEQA claim under Public Resources Code section 21167.4 is mandatory when a petitioner has failed to request a hearing on the writ within 90 days and a party or the court, sua sponte, moves to dismiss.

II.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Smith, J., and Benson, J., concurred.

On March 13, 1987, the opinion was modified to read as printed above.

---

[2]This interpretation is strengthened, rather than weakened, by the case of *Lapica* v. *Eighth Judicial Dist. Court, etc.* (1981) 97 Nev. 86 [624 P.2d 1003]. In *Lapica,* the Nevada Supreme Court was construing a statute requiring a preliminary screening of medical malpractice claims before suit could be filed. The court concluded that a suit filed prior to completion of the screening process was not void *ab initio,* but "subject to dismissal" within the language of the statute. (*Id.,* at p. 1004.) Thus, the court held that the language " 'subject to' " was language of discretion. (*Ibid.*) However, the court noted that in *Lapica* neither the court acting sua sponte nor the defendant by motion had sought dismissal of the complaint, despite plaintiff's failure to complete the screening process prior to bringing suit. (*Ibid.*) Unlike the situation in *Lapica,* a party here did move to dismiss the stale claim, and by doing so triggered its right to have that claim dismissed.

*See footnote, *ante,* page 498.