Filed 9/24/24  Creditor's Adjustment Bureau v. Bathe CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| CREDITOR'S ADJUSTMENT BUREAU, INC., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> DAVID LLOYD BATHE, <br><br>     Defendant and Appellant. | A168116 <br><br> (Sonoma County <br> Super. Ct. No. SCV270405) |

David Lloyd Bathe appeals from a trial court order denying his motion to set aside a default and default judgment under Code of Civil Procedure section 473, subdivision (b).  The default was entered seven weeks after the complaint and summons were served on Bathe, the default judgment was entered less than two months after entry of default, and Bathe filed his set-aside motion just two and one half weeks after entry of judgment.  The trial court concluded that Bathe's statement in his declaration supporting his motion that he failed to timely respond to the complaint because he mistook the date of a case management conference as the deadline for him to respond to the complaint was not credible, and that even if Bathe was genuinely mistaken about the deadline to respond, his mistake was inexcusable.  We conclude that the trial court's denial of the set-aside motion was an abuse of discretion, and therefore we shall reverse.

1

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint and Default*

Plaintiff Creditor's Adjustment Bureau, Inc. (CAB), is a collection agency. As the assignee of the State Compensation Insurance Fund (SCIF), CAP sued Bathe, who did business as Bathe Builders, alleging that he contracted with SCIF for a workers compensation policy and then failed to pay the premium of $96,343.38, which had been "assessed after audit by [SCIF] at the conclusion of [the] policy."[1] The complaint comprised four causes of action, for breach of contract, open book account, account stated, and reasonable value, and sought damages with interest and costs of suit, as well as attorney fees under Civil Code section 1717.5 on the causes of action other than breach of contract.

Bathe was personally served with the summons, complaint, and notice of case assignment on April 4, 2022. The summons, on Judicial Council Form SUM-100, stated "**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below. [¶] You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff." Because service was April 4, 2022, the 30-day deadline was May 4, 2022. The notice of case assignment

---

[1] "SCIF is at once both an agency of the state and an insurance carrier. . . . [Citations.] [F]or purposes of the worker's compensation insurance laws . . . SCIF is an 'insurer' on the same basis as any private carrier offering workers' compensation insurance." (*P.W. Stephens, Inc. v. State Compensation Ins. Fund* (1994) 21 Cal.App.4th 1833, 1835-1836.) SCIF is also a state agency, but it is "exempt from many of the immunities, requirements, restrictions and procedures applicable generally to state agencies. It is also subject to laws generally applicable to private insurance carriers." (*Id.* at p. 1836.)

that was served with the summons and complaint stated that a case management conference was set for a specific date: July 21, 2022.[2]

On May 20, CAB served Bathe by mail a request for entry of default. The request was filed on May 23 and the default was apparently entered the same day.

On June 9, CAB filed a request for default judgment in the amount of $112,926.80. The request was served on Bathe by mail. The request was supported by two short declarations, one from Melissa Klopstock, a "Premium Collections Specialist" at SCIF, and one from attorney Michael Frischer. As the custodian of the files pertaining to Bathe's account, Klopstock declared the documents attached to her declaration were from SCIF's files and had been prepared in the ordinary course of business by "employees and/or agents of [SCIF] having personal knowledge of the occurrences which are cited in said documents." Klopstock stated that SCIF had issued a workers compensation insurance policy to Bathe; Bathe had become indebted to SCIF under the policy for an amount shown in an outstanding invoice, a copy of which was attached; Bathe had failed to pay anything toward the balance despite a demand; and the account had been assigned to CAB for collection, as reflected in an attached document entitled "Assignment." What appears to be the second page of a two-page invoice was attached to Klopstock's declaration. The invoice states it is a "Final Audit Statement," but contains no information about when, how, or by whom the audit was conducted. Frischer's declaration addressed the calculation of interest, the costs incurred by CAB, and stated that in view of the amount of the debt, CAB was entitled

---

[2] Subsequent dates are in 2022 unless otherwise stated.

3

to $1,200 in fees under Civil Code section 1717.5 because Bathe's obligation was incurred "in an action based on a book account."

On June 21, CAB served Bathe by mail with a copy of a case management statement, indicating that CAB requested a nonjury trial, estimated a trial length of 2-4 days, and that no trial had been set because the case was not at issue and judgment was pending entry.

On July 15 a default judgment was entered against Bathe in the amount of $112,926.80, based upon the declarations submitted by CAB.

B.    *Motion to Set Aside Default*

On August 2, less than three weeks after the entry of the default judgment, Bathe, represented by counsel, moved to set aside the default and default judgment under Code of Civil Procedure, section 473, subdivision (b) (section 473(b)), based on Bathe's mistake, inadvertence, surprise, or excusable neglect. The motion was supported by two declarations, one from Bathe and one from his attorney, Kelsey L. O'Rourke, to which a proposed answer to the complaint was attached.

Bathe testified in his declaration that when he reviewed the complaint and other documents served on him in April, he believed that the July 21 hearing date in the notice of assignment was the deadline for him to respond to the lawsuit. He met with an attorney on July 15, and learned for the first time that a default had been entered against him and that July 21 was the date of a case management conference date, and not the deadline to file a response. He then retained counsel to set aside the default and defend him. He disputed the debt asserted in CAB's complaint and requested the opportunity to litigate the matter on the merits. He testified that his failure to obtain an attorney sooner and timely respond to the complaint was based on his mistake and inadvertence.

4

Attorney O'Rourke testified in her declaration that on July 26, after she was retained to represent Bathe, she called CAB's attorney Kenneth Freed to request a set-aside of the default judgment, and that the next day Freed informed her that CAB would not stipulate to setting aside the default judgment.

CAB opposed Bathe's set-aside motion, which it characterized as "terribly disingenuous," on three grounds: Bathe had unclean hands; confusion between a case management conference date and the responsive pleading deadline constituted inexcusable neglect; and Bathe failed to exercise diligence.

C.    *Trial Court Ruling*

Bathe's motion was set on the trial court's weekly law and motion calendar on February 17, 2023, and no testimony or other evidence was presented. In advance of the hearing, the trial court issued a tentative ruling denying the motion. The court concluded that "[d]efendant's statement that he mistook the case management conference date as the date to file a response in this action is not credible." After quoting at length from the notice of assignment and summons that were personally served on Bathe, the ruling stated that Bathe "has not provided any legitimate reason why he could not understand [the] basic instructions" included in the documents, and stated that "even if [Bathe] was genuinely mistaken, such mistake is inexcusable." For this last proposition, the trial court relied on *McClain v Kissler* (2019) 39 Cal.App.5th 399 (*McClain*).

After hearing oral argument, the court adopted the tentative ruling, which is set forth verbatim in the written order filed on March 13, 2023.

5

This appeal followed.[3]

## DISCUSSION

Bathe argues on appeal that the trial court erred by not granting his request for relief under section 473(b). He also raises four issues that he did not raise below: the default judgment is void because the trial court lacked jurisdiction to award CAB attorney fees under Civil Code section 1717.5; the judgment is void because the complaint does not allege a viable cause of action; the judgment is voidable because it was procured through extrinsic mistake or fraud; and the judgment is void because the prove-up declaration from SCIF employee Klopstock does not fulfill the requirements set forth in Code of Civil Procedure section 585, subdivision (d). Because we conclude that it was an abuse of discretion to deny Bathe's motion for relief under section 473(b), we do not reach Bathe's other arguments.

But before we address the merits of Bathe's appeal, we consider the motion he has filed in this court "to report false declaration prepared and submitted by respondent's counsel," which CAB has opposed. We deferred taking action on the motion until we ruled on the merits of the appeal.

A.    *Bathe's Motion to "Report False Declaration"*

1.    *Additional Background*

The very first argument in CAB's trial court brief opposing Bathe's set-aside motion is that relief from default should be denied because Bathe has

---

[3] With his opening brief on appeal, Bathe filed a request for judicial notice, which CAB opposed. We deferred ruling on the request until we ruled on the merits of the appeal, and we now deny it. The documents are not relevant to our resolution of this appeal. (See *Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093, 1118, fn. 3 [denying request for judicial notice of documents that "are unnecessary to resolve the issues before us"].)

unclean hands. The argument, which appears under the heading "Defendant has engaged in fraudulent activity and is untrustworthy," is based primarily on a declaration from Blanca Macias-Chavez, an auditor for SCIF. CAB contends that Bathe's "unclean hands" arose from "deceitful and fraudulent conduct in an effort to avoid paying earned premiums," which amounts to an argument on the merits of CAB's complaint. Later in its opposition to the set-aside motion, CAB repeats its contentions that Bathe was deceitful, and concludes the argument it presents under the heading "Defendant's purported excuse is not remotely credible" by reiterating its claim that Bathe has "unclean hands stemming from his scheme to avoid paying workers compensation premiums."

After this appeal was initiated but before any briefs were filed, Bathe filed a "motion" in this court to report a "false declaration" submitted to the trial court by respondent's counsel Freed.[4] The motion, supported by a declaration from Bathe's appellate attorney Mark Mosely, argues that the Macias-Chavez declaration, which was prepared and submitted to the trial court by CAB's attorney Freed, contains false statements about her interactions with Bathe and her purported search of public records concerning his receipt of a Paycheck Protection Program (PPP) loan.[5] Bathe's

---

[4] The motion is entitled, "Appellant's Motion Pursuant to Rule of Professional Conduct 8.3 and California Rule of Court 8.54 to Report False Declaration Prepared and Submitted by Respondent's Counsel."

[5] The PPP loan figured prominently in CAB's opposition to Bathe's set-aside motion. In opposing Bathe's motion and arguing that Bathe had unclean hands, CAB contended that Bathe's receipt of a PPP loan was evidence that Bathe had employees, which contradicted his statements to SCIF that he had no employees. CAB contended that Bathe "was either lying to the Federal Government or lying to SCIF on his voluntary payroll report and during the audit!" (Bathe contests CAB's contentions, claiming that PPP

7

appellate attorneys learned of the asserted falsehoods in June 2023 (after Bathe filed his notice of appeal from the trial court ruling), in the course of taking Macias-Chavez's deposition in a separate class action lawsuit filed against SCIF. In July 2023 they notified CAB's and SCIF's attorneys with reference to Rule 3.3(a)(3) of the California Rules of Professional Conduct, which requires attorneys to take remedial measures if they have offered material evidence that they later come to know is false. Bathe argues that the false statements in Macias-Chavez's declaration were material because they were the basis of repeated accusations in CAB's opposition papers in the trial court that Bathe "had fraudulently claimed he did not have employees," and they appeared to influence the trial court's finding that Bathe was "not credible." Bathe further argues that the failure of CAB's counsel to take action after being notified of the false declaration and while this case was on appeal "constitute[s] apparent violation of ethical rules involving dishonesty, deceit or intentional misrepresentation within the meaning of Rule 8.3 of the California Rules of Professional Conduct," and therefore Bathe's attorneys were filing a motion to "report such apparent violations to a tribunal with 'the power to investigate or act upon such misconduct,' and thereby to discharge their ethical duty under that Rule."

CAB's response to Bathe's motion to report, supported by a declaration from attorney Freed, argues that the false statements in the Macias-Chavez declaration were not material, as evidenced by the trial court's basing its order solely on the ground that Bathe's excuse for failing to timely respond to the complaint constituted inexcusable neglect and not relying on any part of the Macias-Chavez declaration, let alone the false statements, in denying

loans were available to sole proprietors like him to protect their personal income.)

8

Bathe's motion to set aside the default judgment. CAB argues that under these facts no corrective measures were required.

2. *Analysis*

In view of the fact that the trial court's order denying Bathe's motion to set aside the default judgment says nothing about Bathe's alleged unclean hands and makes no reference to the Macias-Chavez declaration or any of the purported evidence contained therein, including the false statements, and in the absence of a reporter's transcript of the hearing on the set-aside motion, we decline to speculate whether the trial court was influenced by the Macias-Chavez declaration.[6]

Nevertheless, CAB's arguments to the trial court about Bathe's credibility were intertwined with its arguments about his alleged unclean hands, which, as we have noted, rested largely on the Macias-Chavez declaration.[7] Among other things, CAB's opposition to Bathe's set-aside motion described Bathe as having been "caught red-handed lying about no employees by the fact that the auditor knew from public records that the company had obtained a PPP loan." But the motion to report false declaration contends that the subsequent deposition of the auditor (Macias-

_____

[6] The record on appeal includes a settled statement of the hearing on Bathe's motion to set aside the default. The settled statement recites the procedural history of the motion and states that no party or counsel had arranged for a court reporter and all parties waived a reporter for the proceedings. As for the issues before the trial court, the statement says only this: "The court provided all parties and counsel an opportunity for argument pertaining to the court's tentative ruling. Upon conclusion of argument, the court adopted and affirmed its tentative ruling previously published."

[7] CAB's arguments to the trial court about Bathe's lack of credibility spared nothing: exclamation marks, underscores, and vitriolic language permeate the portions of CAB's trial court brief that address Bathe's purported unclean hands and lack of credibility.

9

Chavez) reflects that she had not reviewed public records and it was Bathe himself who volunteered to her that he had a PPP loan.

CAB argues in its response to Bathe's motion to report false declaration and in its respondent's brief on appeal that the trial court did not rely on the Macias-Chavez declaration in ruling on Bathe's set-aside motion. And CAB does not argue in its respondent's brief that Bathe has unclean hands. We shall thus disregard the Macias-Chavez declaration and CAB's trial court arguments concerning unclean hands in addressing the merits of this appeal.

Further, although the trial court concluded that Bathe's excuse for not timely responding to the complaint was not credible and that even if it was, his mistake was not excusable, on appeal CAB retreats from all of its contentions in the trial court regarding Bathe's credibility: CAB presents no argument in its appellate brief as to Bathe's credibility, and insists that the trial court based its order "*solely*" on the grounds that Bathe's excuse for failing to respond to the complaint constituted inexcusable neglect. (Italics added.) We thus disregard CAB's trial court arguments concerning Bathe's credibility, and we also disregard the trial court's finding of non-credibility as to Bathe's statement in his declaration that he mistook the deadline to response to the complaint. In addressing the merits with respect to section 473(b) we consider only Bathe's claimed confusion about the deadline for responding to CAB's complaint constitutes "mistake, inadvertence, surprise, or excusable neglect." (§ 473(b).)

Yet the issue of alleged attorney misconduct in connection with the Macias-Chavez declaration remains. We take seriously Bathe's motion "to report false declaration." We decline to take further action on this issue at present because, as we discuss below, the trial court order denying the motion to set aside default judgment must be reversed in any event. The

10

effect of our decision is that this case will return to the trial court to be decided on the merits, and we will leave it to the trial court in the first instance to determine what if any steps should be taken to investigate or act upon the alleged misconduct that is raised in Bathe's motion and denied in CAB's response, and to take any appropriate corrective action. (See Cal. Supreme Court Committee on Judicial Ethics Formal Opinion 2024-025 at pp. 6-15 [discussing judges' obligations when attorney misconduct occurs], available at <http://www.judicialethicsopinions.ca.gov/wp-content/uploads/CJEO-Formal-Opinion-2024-025.pdf>.)

B.      *Merits of the Appeal*

1.      *Applicable Law and Standard of Review*

We begin with first principles. "Proceeding to judgment in the absence of a party is an extraordinary and disfavored practice in Anglo-American jurisprudence: '[T]he policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary.' " (*Au-Yang v. Barton* (1999) 21 Cal.4th 958, 963.)

Accordingly, section 473(b) authorizes the court to relieve a party "upon any terms as may be just . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." Section 473(b) also requires the party to "diligently seek relief 'within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken.' " (*Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 694 (*Fasuyi*), quoting section 473(b).)

11

As we have explained, " ' "A motion seeking [relief under section 473(b)] lies within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion. [Citations.] However, the trial court's discretion is not unlimited and must be ' "exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' [Citations.] [¶] Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted. [Citations.] In such situations 'very slight evidence will be required to justify a court in setting aside the default.' [Citations.] [¶] Moreover, because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits. [Citations.]" ' " (*Fasuyi*, *supra*, 167 Cal.App.4th at p. 695, quoting *McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352, 359-360.)

This means that where a defendant promptly seeks relief, and there is no showing of prejudice to the plaintiff, " ' "very slight evidence will be required to justify a court in setting aside the default," ' " and " '[u]nless inexcusable neglect is clear, the policy favoring trial on the merits prevails.' " (*Fasuyi*, *supra*, 167 Cal.App.4th at p. 696, quoting *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233, 235.)

2.  *Analysis*

Bathe filed his motion for relief well within the statutory time limit of six months. By filing his motion less than two and a half months after the apparent entry of default in May, and less than three weeks after the entry of

12

the default judgment and his learning of the default, he promptly sought relief. (See *Fasuyi, supra,* 167 Cal.App.4th at pp. 689, 696 [defendant filing motion to set aside 16 days after learning of default judgment has promptly sought relief].) CAB has made no showing of prejudice, and Bathe's declaration constitutes evidence to support his claim for relief. Accordingly, Bathe should be given the opportunity to defend against CAB's claims on the merits " '[u]nless inexcusable neglect is clear.' " (*Id.* at p. 696.)

The summons that was served on Bathe was clear that a response to CAB's complaint was to be filed and served within 30 days of service, and the notice of assignment, on which Bathe claims he relied, was clear that a written response to the complaint was to be filed "as required by the summons." That said, the very same paragraph of the notice of assignment that referred Bathe to the summons also stated that a case management conference had been scheduled for July 21, which was the only actual date that appeared on the summons or notice of assignment. "Within the context of section 473(b) neglect is excusable if a reasonably prudent person under similar circumstances *might* have made the same error." (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 929, italics added.) A reasonably prudent layperson reviewing the document at issue here *might* have misunderstood the difference between a case management conference and the response to a complaint, despite the fact that the conference was more than 30 days after the receipt of the documents, and therefore believed that he had until mid-July to act on the complaint. Here, once Bathe learned otherwise, he acted promptly to retain counsel and seek to have the default set aside. There is no basis to believe that this is a case where Bathe belatedly "c[a]me to regret past inaction or sitting on [his] rights." (*McClain, supra,* 39 Cal.App.5th at p. 414.)

13

"Each case must be determined upon its own peculiar facts and circumstances." (*Goodson v. Bogerts, Inc.* (1967) 252 Cal.App.2d 32, 42-43 (*Goodson*).).) The facts of this case are unlike the facts of *McClain*, on which the trial court relied in concluding Bathe's mistake was inexcusable. In *McClain*, where this court affirmed a trial court order denying defendants relief from default, the trial court found that the defendants—who included the attorney who represented them—failed to respond to plaintiffs' complaint " 'despite not only knowing of the action, but actually taking part in it.' " (*McClain*, *supra*, 39 Cal.App.5th at pp. 406, 410.) Among other things, at a case management conference, where defendant/attorney Kissler was present, the court had stated, "either we get an answer from Ms. Kissler or you take a default on this case." (*Id.* at p. 407, italics omitted.) A minute order served on the parties after the conference stated, "No later than July 22, 2016, a default must be filed for Defendant Karen Kissler ind. & dba Karen Kissler Esq. unless an answer has been filed." (*Ibid.*, italics omitted) No answer was filed; plaintiffs sought a default, which was entered; and eventually defendant moved to vacate entry of the default, which was denied. (*Id.* at pp. 408-409.)

The facts here are also unlike the facts of *Goodson* and *Gilio v. Campbell* (1952) 114 Cal.App.2d Supp. 853 (*Gilio*), which CAB cites in its appellate brief as supporting the trial court's decision. In *Goodson, supra,* 252 Cal.App.2d 32, the defaulting party was the plaintiff, who represented himself in initiating and pursuing his complaint. (*Id.* at p. 40.) Then, after being served with a cross-complaint, he claimed he "did not 'understand its significance' " or know that he was required to file an answer. (*Ibid.*) And apparently he did not consult a lawyer until much later: he did nothing until almost two months after the default judgment was entered against him on

14

the cross-complaint, and almost one month after more than $7,000 of his assets were levied upon, at which point an attorney filed a motion on his behalf to set aside the default. (*Id.* at pp. 34-35.) Evidence before the trial court, including his proceeding in pro per in pursuing his own complaint, supported the inferences that "plaintiff's plea of ignorance was false"; moreover, plaintiff had acknowledged his obligation to the defendant but "intentionally ignored [the cross-complaint] to forestall payment of his obligation and would have continued to do so had not . . . his assets been levied upon." (*Id.* at p. 40.)

Here, in contrast, Bathe does not claim ignorance of the need to answer the complaint—he mistook the case management conference date for the date to respond to the complaint. And there is no evidence that he seeks to postpone paying a debt that he has acknowledged. To the contrary, Bathe states in his declaration that he disputes the debt asserted in CAB's complaint. Bathe consulted a lawyer before what he thought was the deadline, and once he learned a default judgment had been entered against him, he immediately retained counsel to set aside the default and defend him on the merits. We cannot say that his mistake was clearly inexcusable under the circumstances.

Nor is this case like *Gilio*, where the appellate department reversed a trial court order granting defendant's motion to vacate a default and set aside a default judgment. (*Gilio*, *supra*, 114 Cal.App.2d Supp. at p. 858.) There, the constable who served the summons and complaint advised the defendant at the time of service "to take care of the matter before it went too far," and defendant responded that he would take care of it the next day, but did not do so. (*Id.* at p. 855.) After a default judgment was entered, the same constable told defendant that a judgment had been entered and a writ of execution had

15

been issued. (*Ibid.*) The defendant then consulted the plaintiff's attorney, who advised him to retain counsel if he wanted to contest the satisfaction of the judgment, but the defendant did not consult an attorney until a month after that. (*Ibid.*) The defendant offered a host of somewhat contradictory excuses for his delay: he testified "that he was not familiar with the law; that he had no knowledge that plaintiff could get a judgment against him; that he thought he would be called into court before a judgment could be taken against him; . . . [and] that he was very busy." (*Id.* at pp. 855-856.) He also testified that initially he thought he should not defend the suit, because he would injure his business reputation, but then changed his mind. (*Id.* at p. 856.) The appellate department found no basis for a mistake of fact or law, because the summons stated that judgment could be taken against him if he did not respond within 10 days, defendant did not claim he was unaware of the contents of the summons and complaint, and in any event failure to read the summons would be no excuse. (*Id.* at p. 857.) The appellate department further concluded that defendant was grossly negligent in delaying so long to contact an attorney after speaking with plaintiff's counsel; and observed that a change of mind is not a ground for vacating a judgment. (*Id.* at pp. 857-858.) Here, in contrast, Bathe contends that he reviewed but misunderstood the documents he received. These documents stated that a response to the complaint was required within 30 days, but also identified a case management conference date with no explicit indication of the connection between the two dates. And as we have stated, we cannot conclude his mistake was inexcusable. And, unlike in *Gilio*, there is no evidence here of gross negligence or a change of mind.

In sum, we conclude that on the facts here, it was an abuse of discretion to deny Bathe's set-aside motion.

16

## DISPOSITION

The March 13, 2023 order denying Bathe's motion to set aside the default and default judgment is reversed, and the matter is remanded to the trial court with instructions to enter a new order granting the motion and for any further proceedings on the motion to report false declaration. Bathe shall recover his costs on appeal.

                                         _____
                                         Miller, J.

WE CONCUR:


_____
Stewart, P.J.


_____
Richman, J.


A168116, *Creditor's Adjustment Bureau, Inc. v. Bathe*